IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| LINDA G. MCKNIGHT,            )<br>                                              )<br>                                              ) CIVIL ACTION NO. 0:04-1646-24BD<br>               Plaintiff,         )<br>                                              )<br>v.                                           ) **REPORT AND RECOMMENDATION**<br>                                              )<br>JO ANNE B. BARNHART        )<br>COMMISSIONER OF SOCIAL )<br>SECURITY,                          )<br>                                              )<br>               Defendant.      )<br>_____) | |

The Plaintiff filed the complaint in this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner wherein she was denied disability benefits. This case was referred to the undersigned for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), (D.S.C.).

The record reflects that Plaintiff sustained a work-related back injury on January 6, 2000 when she slipped and fell on a wet floor. (R.p. 181). Plaintiff filed prior applications for disability on March 20, 2000, and again on July 8, 2002, both of which were denied initially and not appealed further. (R.pp. 13, 92-102). Plaintiff then applied for Supplemental Security Income (SSI) on September 10, 2002, alleging disability as of September 9, 2002, due to lumbar and cervical spine tenderness, cervical disc displacement, pain, headaches, numbness and weakness in her legs, and

stiffness in her arms and neck. (R.pp. 88-91, 108). Plaintiff's claim was denied initially and upon reconsideration. Plaintiff then requested a hearing before an Administrative Law Judge (ALJ), which was held on July 8, 2003. (R.pp. 25-50). The ALJ thereafter denied Plaintiff's claim in a decision issued November 14, 2003. (R.pp. 13-21). The Appeals Council denied Plaintiff's request for a review of the ALJ's decision, thereby making the determination of the ALJ the final decision of the Commissioner. (R.pp. 5-7).

The Plaintiff then filed this action in United States District Court. Plaintiff asserts that there is not substantial evidence to support the ALJ's decision, and that the decision should be reversed and remanded for an award of benefits. The Commissioner contends that the decision to deny benefits is supported by substantial evidence, and that the Plaintiff was properly found not to be disabled.

## Scope of review

Under 42 U.S.C. § 405(g), the Court's scope of review is limited to (1) whether the Commissioner's decision is supported by substantial evidence, and (2) whether the ultimate conclusions reached by the Commissioner are legally correct under controlling law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Richardson v. Califano, 574 F.2d 802, 803 (4th Cir. 1978); Myers v. Califano, 611 F.2d 980, 982-983 (4th Cir. 1980). If the record contains substantial evidence to support the Commissioner's decision, it is the court's duty to affirm the decision. Substantial evidence has been defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. **If there is evidence to justify refusal to direct a verdict were the case before a jury, then there is "substantial evidence."** [emphasis added].

2

Hays, 907 F.2d at 1456 (citing Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966)). The Court lacks the authority to substitute its own judgment for that of the Commissioner. Laws, 368 F.2d at 642. "[T]he language of [405(g)] precludes a de novo judicial proceeding and requires that the court uphold the [Commissioner's] decision even should the court disagree with such decision as long as it is supported by substantial evidence." Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

## Discussion

A review of the record shows that Plaintiff, who was thirty-six (36) years old when she alleges her disability began, has a high school education with past relevant work experience as a residential counselor for troubled children, a daycare assistant, a cashier, and a dietary aid. (R.pp. 88, 109, 114). In order to be considered "disabled" within the meaning of the Social Security Act, Plaintiff must show that she has an impairment or combination of impairments which prevent her from engaging in all substantial gainful activity for which she is qualified by her age, education, experience and functional capacity, and which has lasted or could reasonably be expected to last for at least twelve (12) consecutive months. After review of the evidence and testimony in the case, the ALJ determined that, although Plaintiff was no longer able to perform her past relevant work, she nevertheless retained the residual functional capacity to perform work at the light and sedentary levels[1] with restrictions, and was therefore not disabled. (R.pp. 20-21).

---

[1]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b) (2004).

Sedentary work is defined as lifting no more than 10 pounds at a time and occasionally lifting and carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a) (2004).

Plaintiff asserts that in reaching this decision, the ALJ erred by finding that she had the exertional capacity for light work with restrictions, by failing to address Plaintiff's non-exertional impairments, by improperly discrediting Plaintiff's subjective complaints of pain, and by providing an improper hypothetical to the Vocational Expert. However, after careful consideration of the evidence and arguments presented, the undersigned finds that there is substantial evidence to support the conclusion of the ALJ that Plaintiff was not disabled as that term is defined in the Social Security Act during the relevant time period, and that the decision of the Commissioner should therefore be affirmed.

**I.**

With regard to Plaintiff's exertional capacity, Plaintiff's medical records reflect that she was seen by orthopedist Dr. Don Stovall on January 8, 2002 for a worker's compensation claim evaluation. Dr. Stovall found that Plaintiff had fairly good range of motion in her neck and extremities, somewhat limited range of motion in her spine, with normal muscle strength and tone. Dr. Stovall noted in his records that Plaintiff made only a "very poor effort and submaximal voluntary effort" during his examination, and opined that Plaintiff could return to her previous employment with restrictions from lifting and carrying ten (10) to fifty (50) pounds more than occasionally. (R.pp. 198-200). Plaintiff was also examined by orthopedist Dr. William Wilson on February 12, 2002, who, even though Plaintiff was "reluctant" during strength testing, found that Plaintiff appeared to have full strength in her upper and lower extremities. X-rays of Plaintiff's spine revealed only mild scoliosis, and her cervical spine films were normal. While Dr. Wilson temporarily limited Plaintiff to sedentary work, he also indicated that she had not achieved maximum medical improvement. (R.p. 233). After a follow-up visit on March 20, 2002, Dr. Wilson limited

Plaintiff temporarily to "light duty, sedentary work". (R.p. 232). By June 7, 2002, Dr. Wilson found that Plaintiff had no motor deficit in any of her extremities, and assessed a 5% whole person impairment. (R.p. 230). See Waters v. Gardner, 452 F.2d 855, 858 (9th Cir. 1971) [concluding that a whole person impairment rating of less than thirty (30%) percent was inconsistent with allegations of disability].

On July 8, 2002, saw Dr. John Johnson of the Carolina Spine Institute for a consultation. Although Plaintiff exhibited spinal tenderness with severely limited range of motion, Dr. Johnson found that her upper and lower extremity strength was 5/5 (full strength), and that her reflexes were symmetrical. An EMG neuroconduction study yielded normal results, and Dr. Johnson noted that Plaintiff's objective findings were "very odd...for intraspinal pain". (R.pp. 249, 257-258). Dr. Johnson subsequently ruled out any medically serious problem. (R.p. 259). Plaintiff then saw Dr. Wilson again on August 20, 2002, who noted that Plaintiff's motor strength was intact and suggested that she lift no more than twenty-five (25) to thirty (30) pounds. (R.p. 230).

On September 13, 2002 (four days after her alleged disability onset date), Plaintiff was seen by Dr. Elizabeth Snoderly, a pain management specialist. Plaintiff reported constant pain as well as "rare" chest pain and shortness of breath which occurred with exertion. Plaintiff also exhibited restricted range of motion and decreased strength with multiple trigger points and spasms, although the results of an EMG nerve conduction study were normal. Dr. Snoderly assessed myofascial pain syndrome, cervical rediculopathy with possible herniated disc, and possible cervical facet joint syndrome. (R.pp. 246-247). A subsequent CT scan of Plaintiff's cervical spine on October 7, 2002 revealed a disc protrusion at C5-6 impinging on the exiting nerve root, while a CT of her lumbar spine revealed mild disc bulges at multiple levels which did not impinge on any nerve roots.

(R.pp. 185-188). Nevertheless, during a follow-up visit with Dr. Wilson on December 6, 2002, he found that Plaintiff had full strength in her upper extremities with no sensory deficits and no long track signs in her extremities. He opined that Plaintiff would require vocational rehabilitation, assessed a 10% impairment, and discharged her from his care. (R.p. 227).

Finally, state agency physician Dr. William Cain reviewed Plaintiff's medical records on April 9, 2003 and completed a physical residual functional capacity assessment in which he determined that Plaintiff could lift fifty (50) pounds occasionally and twenty-five (25) pounds frequently; stand and/or walk for about six hours in an eight hour work day, and sit for about six hours in an eight hour work day; that she could frequently climb stairs, never climb ladders, ropes, or scaffolds; frequently balance, stoop, kneel, crouch, or crawl; and could occasionally reach overhead. (R.pp. 264-267).

After review of this evidence the ALJ determined that Plaintiff retained the ability to perform light work activity with a sit/stand option, and postural limitations of no crawling, crouching, climbing, squatting, or kneeling, no use of the lower extremities for pushing and pulling, and no use of the upper extremities for work above shoulder level. (R.p. 18). The medical records of Dr. Stovall, Dr. Wilson, and Dr. Johnson, as well as the other medical evidence in the record, provide substantial evidence to support this finding and conclusion. See Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1993) [ALJ may properly give significant weight to an assessment of an examining physician]; Richardson v. Perales, 402 U.S. 389, 408 (1971) [assessment of examining, non-treating physicians may constitute substantial evidence in support of a finding of non-disability]. The report of Dr. Cain also provides substantial evidence to support the ALJ's decision. See Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986) [opinion of a non-examining physician can

constitute substantial evidence to support the decision of the Commissioner]. Therefore, the undersigned does not find any reversible error in the ALJ's finding that Plaintiff retained the residual functional capacity to perform light work with restrictions. See also Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) [the mere presence of impairments does not automatically entitle a claimant to disability benefits, there must be a showing of related functional loss]; Trenary v. Bowen, 898 F.2d 1361, 1364 (8th Cir. 1990) [Courts should properly focus not on a claimant's diagnosis, but on the claimant's actual function limitations]; Lee v. Sullivan, 945 F.2d 687, 692 (4th Cir. 1991) [failure of physician to opine that plaintiff was permanently and totally disabled supports finding of non-disability].

**II.**

With respect to Plaintiff's claim that the ALJ failed to address her non-exertional impairments (anxiety and depression) in reaching his decision, a review of the ALJ's decision shows that he did consider the evidence concerning Plaintiff's mental condition and found that she did not have any severe mental impairments. (R.pp. 17-18). Again, the undersigned can find no reversible error in this conclusion.  While Plaintiff's medical records do reflect that she was apparently prescribed Zoloft (an anti-depressant) by her family physician; see  (R.pp. 215-217); the only other evidence concerning any mental impairment Plaintiff might have had is reflected in the records of Dr. Deborah Dowes, a psychologist with the South Carolina Vocational Rehabilitation Department. Dr. Dowes saw the Plaintiff on March 19, 2003 for complaints of pain, depression, and difficulty sleeping, and for three additional counseling sessions in March and April 2003. See generally, (R.pp. 273-277). While Plaintiff was urged to set up counseling at a mental health center, there is no evidence that she did so.  Further, almost all of the information in Dr. Dowes' reports is based on

7

what the Plaintiff told Dr. Dowes, not on any findings by Dr. Dowes; nor does Dr. Dowes offer any diagnosis of a mental condition. Id.

The undersigned can find no reversible error in the ALJ's conclusion that any mental impairments Plaintiff had were non-severe based on this record. See Gross, 785 F.2d at 1166 ["[A] psychological disorder is not necessarily disabling. There must be a showing of related functional loss"].

### III.

With respect to Plaintiff's subjective testimony, the record shows that the ALJ thoroughly reviewed this testimony and carefully compared it with the medical evidence before finding that Plaintiff's testimony concerning the severity of her symptoms and the extent of her limitations was not fully credible. (R.pp. 15, 18-19). The undersigned can find no reversible error in the ALJ's treatment of Plaintiff's testimony in conjunction with the medical evidence of record. See Mickles v. Shalala, 29 F.3d 918, 925-926 (4th Cir. 1994) [In assessing the credibility of the severity of reported subjective complaints, consideration must be given to the entire record, including the objective and subjective evidence]; Hunter, 993 F.2d at 35 [ALJ may properly consider inconsistencies between a plaintiff's testimony and the other evidence of record in evaluating the credibility of the plaintiff's subjective complaints]; Jolley v. Weinberger, 537 F.2d 1179, 1181 (4th Cir. 1976) [finding that objective medical evidence, as opposed to the claimant's subjective complaints, supported an inference that he was not disabled].

### IV.

Finally, Plaintiff argues that the ALJ posed an improper hypothetical to the vocational expert which did not encompass all of the Plaintiff's restrictions, and that when a proper

hypothetical was posed to the vocational expert by her attorney, the VE testified that Plaintiff was incapable of substantial gainful employment. This argument is without merit.

At the hearing, the ALJ proffered a hypothetical to the vocational expert which reflected the residual functional capacity found to exist by the ALJ. In response to this hypothetical, the vocational expert identified several jobs which Plaintiff could perform with her limitations, considering her age and educational background. (R.pp. 46-47). While Plaintiff may disagree with the findings of the ALJ, the undersigned has previously concluded that these findings are supported by substantial evidence in the record as that term is defined in the applicable caselaw. Hence, the hypothetical given by the ALJ to the vocational expert was proper, and the undersigned finds no grounds in the ALJ's treatment of the vocational expert's testimony for reversal of the final decision of the Commissioner. Lee v. Sullivan, 945 F.2d at 694; see also Martinez v. Heckler, 807 F.2d 771, 773 (9th Cir. 1986); Payne v. Sullivan, 946 F.2d 1081, 1084 (4th Cir. 1991) [claimant not entitled to disability where the record as a whole failed to "demonstrate an inability to engage in work activity for a continuous period of at least twelve months"]; Cruse v. Bowen, 867 F.2d 1183, 1186 (8th Cir. 1989) ["the mere fact that working may cause pain or discomfort does not mandate a finding of disability"]; *cf.* English v. Shalala, 10 F.3d 1080, 1084 (4th Cir. 1993) [finding that substantial evidence supported the ALJ's conclusion that the claimant was physically capable of limited light work despite his multiple impairments; case remanded on other grounds].

### **Conclusion**

Substantial evidence is defined as " … evidence which a reasoning mind would accept as sufficient to support a particular conclusion." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). As previously noted, if the record contains substantial evidence to support the decision

9

(i.e., if there is sufficient evidence to justify a refusal to direct a verdict were the case before a jury), this Court is required to uphold the decision, even should the Court disagree with the decision. Blalock, 483 F.2d at 775.

Under this standard, the record contains substantial evidence to support the conclusion of the Commissioner that the Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time period. Therefore, it is recommended that the decision of the Commissioner be **affirmed**.

                                                s/ BRISTOW MARCHANT
                                                Bristow Marchant
                                                United States Magistrate Judge

Columbia, South Carolina

February 23, 2005